### WATTS et ux. v. HOLLAND et al.
No. 11127.

Circuit Court of Appeals, Ninth Circuit.
Feb. 13, 1946.
Rehearing Denied March 18, 1946.

Alfred J. Harwood, of San Francisco, Cal., for appellants.

W. P. Rich and Richard H. Fuidge, both of Marysville, Cal., and Chas. A. Cantwell, of Reno, Nev., for appellees.

Before DENMAN, STEPHENS, and BONE, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a decision of the District Court in a suit for an accounting and disposition of alleged partnership assets, holding that appellant was entitled to neither.

The amended complaint as permitted by Rule 15(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, described two alternative relationships between the parties. The first alleged a transfer on October 25, 1940, by appellant George C. Watts, hereinafter called Watts, of his ranch near Oakdale in California to Holland Livestock Company, to be held by it in trust for Watts and Lawrence Holland, hereinafter called Holland, as equal partners. The District Court found that there was no such partnership in the land. Its decision is supported by the evidence.

Alternatively the complaint alleged "That on October 25th, 1940 plaintiff George C. Watts and the defendant L. J. Holland entered into a partnership agreement, which said partnership agreement provided as follows, to-wit: That plaintiff should convey the land described in Paragraph II of the complaint to L. J. Holland or the Holland Land Company, a corporation, as agent of said L. J. Holland, and that in consideration of such conveyance said defendant L. J. Holland agreed with said plaintiff George C. Watts that said land should be operated as a sheep and livestock ranch by said George C. Watts and L. J. Holland; that said plaintiff George C. Wats should be the manager of said ranch and that the profits thereof should be divided equally between said George C. Watts and L. J. Holland; that shortly thereafter and in consideration of said defendant L. J. Holland's planting a portion of said land to Ladino clover said L. J. Holland and George C. Watts agreed that the interest of said George C. Watts should be one-third instead of one-half; that in the Fall of 1941 and in violation of said agreement and without the consent of plaintiff George C. Watts said defendant L. J. Holland caused said plaintiff George C. Watts to be ousted as such manager and without the consent of said plaintiff George C. Watts installed Clark Holland, the brother of said L. J. Holland, in charge of said ranch as manager; that at no time thereafter did said L. J. Holland permit said plaintiff George C. Watts to act as manager of said ranch; that by reason of the facts in this paragraph alleged the consideration for such conveyance wholly failed; that if said plaintiff George C. Watts had been permitted to manage said ranch said plaintiff would have caused said ranch to earn a large sum of money as the profits of the operation of said ranch; that in the nature of things plaintiffs are unable to allege the amount of such profits."

All the witnesses were heard by the court, Holland's deposition having been taken before he testified. The court found as untrue the allegation of the above agreement. It found that the ranch had been conveyed to the Holland Company; that Watts became a mere employee of Holland; that the employment had been terminated by Watts' action and that the accounts between them had been settled.

The land conveyed to the Holland Land Co. by Watts was in the bankruptcy court under section 75, sub. r of the Bankruptcy Act, 11 U.S.C.A. § 203, sub r. There has been a composition agreement with the creditors. It is not contended that the value of the ranch above Watts' debt is so great that it makes unconscionable the concept that he would part with it for a consideration of a job from the purchaser as

manager at a salary of $150 per month with a bonus of a third of the profits from running cattle on the land, the latter being Holland's contention as to the nature of the transaction. There is testimony that Watts stated that "he had gone broke on the place and hadn't Lawrence [Holland] bought the place that he wouldn't be there, that he wouldn't have the job". Indeed Watts' brief states "We are not here concerned with the value of the land at the time the agreement was made at Stockton on October 25, 1940" when the ranch was transferred to the Holland Company.

Watts' contention is that the District Court should have held as a matter of law on the uncontradicted evidence that the consideration for his transfer of the encumbered land was the agreement for a partnership in an enterprise to run cattle on the land.

We do not agree that the evidence tending to support Watts' contention as to the partnership is uncontradicted. Watts relies on Holland's testimony as follows: "If he wanted to deed that [the ranch in question] to me that I would take that over, and I would put up the necessary money to put it into clover, fence it and improve it and stock it, and that I would put him in, as manager, give him $150.00, plus one-third of any profit that the ranch made, and that agreement was made in Stockton."

Further Holland testified: "He (Watts) told me that he was sure if I would take this property over, that there was some good opportunity there, that he could make some money with it."

"Q. Did you at that time mention the word 'co-partnership' or 'partnership'. A. If I did, it was in regard to the profits because he was to be a partner in the profits we made from the ranch.

"Q. You say that he was to be partner in the profits made from the ranch but not in the ranch itself? A. That is right.

"Q. Then you didn't make the statement that I have asked you in the preceding question in my office? A. No, sir.

"Q. Except that you qualified it by saying that if you said anything about a partnership, it was to be partnership in the profits made from the ranch? A. In the net profit made from the livestock which was run on the ranch."

This testimony was preceded by a letter of date September 5, 1940, from Holland to Watts in which Holland stated: "In regard to your Clover Ranch we are interested in trying to work out something with you on it, either to buy the place outright from you, or it is possible we might work out some other deal, whereas we could pay off the indebtedness which is on it now and operate it on some sort of a partnership basis. However will discuss it more fully with you when I come down."

There is contrary evidence that in the cattle raising trade those associated, the owners and cowboys alike, often refer to their relationship as partners and Holland claims he referred to his relationship with Watts in this colloquial sense and that Watts so understood it. There is abundant evidence that Watts regarded his status as that of an employee holding a "job on the ranch" where he was "working for Lawrence" [Holland] at a fixed "salary and a bonus", a job from which he intended to "quit", and one in which "any orders that were given" were to be given by Holland.

■ The District Court could infer that one does not conceive of a partnership as a job in which he was "working for Lawrence" nor of his interest in it as a salaried one or producing a bonus nor of it as a relationship from which he will "quit". With such contradictory evidence from witnesses heard by the court, we hold that the finding that there was no contract creating a partnership is sustained.

■ Nor is there merit in the contention of Watts that, assuming no partnership existed, Holland should hold the land in trust for Watts because Holland's promise to employ Watts on a salary and bonus which employment Holland could terminate is no consideration for his conveyance of the ranch. There is evidence, supra, from which the court could infer that Holland's agreement to make Watts a superintendent and with it a chance for permanent employment had real value to Watts which he frankly acknowledged. If it had been terminated immediately after the transfer, it might be contended that Holland's promise to employ Watts had been made in bad faith and rescission sought. However the testimony is uncontradicted that the employment continued for two years, when Holland's brother was placed in charge with an offer to Watts to retain him at the same salary but without the bonus which offer Watts refused thereby terminating his employment.

■ Nor was there prejudicial error in excluding Watts' testimony that Holland stated as the reason for placing his brother in charge that he did not want his brother taken in the draft. There was equivalent testimony of Watts which remained in the record. With inconsistencies in other testimony the court, having Watts before him as a witness, could refuse to accept the statement as a fact.

The judgment is affirmed.